FILED
2020 Oct-23 PM 03:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

# UNITED STATES DISTRICT COURT
for the

FILED
2020 OCT 23 P 2:26

Terri McGuire-Mollica
_Petitioner_

v.                                         Case No. 7:20-cv-1672-RDP-SGC
                                           _(Supplied by Clerk of Court)_

Patricia V. Bradley
_Respondent_
(name of warden or authorized person having custody of petitioner)

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### Personal Information

1. (a) Your full name: Terri McGuire-Mollica
   (b) Other names you have used: Terri Mollica
2. Place of confinement:
   (a) Name of institution: Aliceville Satellite Prison Camp
   (b) Address: P.O. Box 487
                Aliceville, AL 35442
   (c) Your identification number: 31860-001
3. Are you currently being held on orders by:
   ☒ Federal authorities      ☐ State authorities      ☐ Other - explain:

4. Are you currently:
   ☐ A pretrial detainee (waiting for trial on criminal charges)
   ☒ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime
   If you are currently serving a sentence, provide:
      (a) Name and location of court that sentenced you: U.S. District Court, Northern District of Alabama, Birmingham, AL
      (b) Docket number of criminal case: 2:14-cr-329-LCB
      (c) Date of sentencing: 8/09/2016
   ☐ Being held on an immigration charge
   ☐ Other _(explain)_:

### Decision or Action You Are Challenging

5. What are you challenging in this petition:
   ☐ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

Page 2 of 9

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

☐ Pretrial detention
☐ Immigration detention
☐ Detainer
☐ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory maximum or improperly calculated under the sentencing guidelines)
☐ Disciplinary proceedings
☒ Other *(explain)*: Plaintiff is being detained at the Aliceville, AL Prison in violation of the Constitution, Laws, or Treaties of the United States.

6. Provide more information about the decision or action you are challenging:
    (a) Name and location of the agency or court:

    (b) Docket number, case number, or opinion number:
    (c) Decision or action you are challenging *(for disciplinary proceedings, specify the penalties imposed)*:

    (d) Date of the decision or action:

### Your Earlier Challenges of the Decision or Action

7. **First appeal**
    Did you appeal the decision, file a grievance, or seek an administrative remedy?
    ☐ Yes    ☒ No
    (a) If "Yes," provide:
        (1) Name of the authority, agency, or court:

        (2) Date of filing:
        (3) Docket number, case number, or opinion number:
        (4) Result:
        (5) Date of result:
        (6) Issues raised:

    (b) If you answered "No," explain why you did not appeal: N/A

8. **Second appeal**
    After the first appeal, did you file a second appeal to a higher authority, agency, or court?
    ☐ Yes    ☒ No

  (a) If "Yes," provide:

   (1) Name of the authority, agency, or court:

   (2) Date of filing:
   (3) Docket number, case number, or opinion number:
   (4) Result:
   (5) Date of result:
   (6) Issues raised:

  (b) If you answered "No," explain why you did not file a second appeal:

9. **Third appeal**

  After the second appeal, did you file a third appeal to a higher authority, agency, or court?
  ☐ Yes    ☒ No

  (a) If "Yes," provide:

   (1) Name of the authority, agency, or court:

   (2) Date of filing:
   (3) Docket number, case number, or opinion number:
   (4) Result:
   (5) Date of result:
   (6) Issues raised:

  (b) If you answered "No," explain why you did not file a third appeal:

10. **Motion under 28 U.S.C. § 2255**

  In this petition, are you challenging the validity of your conviction or sentence as imposed?

  ☐ Yes    ☒ No

  If "Yes," answer the following:
  (a) Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?
    ☐ Yes    ☐ No

If "Yes," provide:
(1) Name of court:
(2) Case number:
(3) Date of filing:
(4) Result:
(5) Date of result:
(6) Issues raised:

(b) Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

❏ Yes         ❏ No

If "Yes," provide:
(1) Name of court:
(2) Case number:
(3) Date of filing:
(4) Result:
(5) Date of result:
(6) Issues raised:

(c) Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your conviction or sentence:

11. **Appeals of immigration proceedings**

Does this case concern immigration proceedings?

❏ Yes         ❏ No

If "Yes," provide:
(a) Date you were taken into immigration custody:
(b) Date of the removal or reinstatement order:
(c) Did you file an appeal with the Board of Immigration Appeals?

❏ Yes         ❏ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

If "Yes," provide:
(1) Date of filing:
(2) Case number:
(3) Result:
(4) Date of result:
(5) Issues raised:

(d) Did you appeal the decision to the United States Court of Appeals?
☐ Yes     ☐ No
If "Yes," provide:
(1) Name of court:
(2) Date of filing:
(3) Case number:
(4) Result:
(5) Date of result:
(6) Issues raised:

12. **Other appeals**
Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?
☐ Yes     ☒ No
If "Yes," provide:
(a) Kind of petition, motion, or application:
(b) Name of the authority, agency, or court:

(c) Date of filing:
(d) Docket number, case number, or opinion number:
(e) Result:
(f) Date of result:
(g) Issues raised:

## Grounds for Your Challenge in This Petition

13. State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:** The Aliceville prison is in violation of the CARES Act 2020, signed into law by the President in March 2020.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

The President, by signing the CARES Act into law, directed Attorney General William Barr to release Bureau of Prison inmates vulnerable to the COVID-19 virus (pursuant to the Center for Disease Control guidelines) to Home Confinement to immediately reduce prison populations.

(b) Did you present Ground One in all appeals that were available to you?  N/A
☐ Yes       ☐ No

**GROUND TWO:** The Aliceville prison is in violation of 18 USC §4042(a)(2).

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

The Bureau of Prisons is required to provide adequate and suitable living quarters for safekeeping, care, and subsistence of all persons charged with or convicted of an offense against the United States.

(b) Did you present Ground Two in all appeals that were available to you?
☐ Yes       ☐ No      N/A

**GROUND THREE:** The Aliceville prison is in violation of the Eighth Amendment to the United States Constitution.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

Under the "Cruel and Unusual Punishments" Clause of the Eighth Amendment, the Bureau of Prisons is obligated to keep prisoners free from harm while incarcerated.

(b) Did you present Ground Three in all appeals that were available to you?
☐ Yes       ☐ No      N/A

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**GROUND FOUR:** The Aliceville prison is in violation of the Fourteenth Amendment to the United States Constitution.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:
The unconstitutional conditions of confinement, along with the BoP's and Aliceville's deliberate indifference to Plaintiff's life and liberty establishes a Due Process violation under the Fourteenth Amendment.

(b) Did you present Ground Four in all appeals that were available to you?
☐ Yes   ☐ No   N/A

14. If there are any grounds that you did not present in all appeals that were available to you, explain why you did not:   N/A

## Request for Relief

15. State exactly what you want the court to do: Plaintiff seeks immediate release from the Bureau of Prisons custody, subject to conditions required by this Court and allow her the quarantine at home.

## Declaration Under Penalty Of Perjury

If you are incarcerated, on what date did you place this petition in the prison mail system:

September 7th, 2020

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct. I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date: 9/07/2020

*Signature of Petitioner*

*Signature of Attorney or other authorized person, if any*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ALABAMA

WESTERN DIVISION

TERRI MCGUIRE-MOLLICA
Plaintiff

v.

PATRICIA V. BRADLEY, WARDEN
Defendant

---

COMPLAINT AND REQUEST FOR PRELIMINARY INJUNCTION

AND TEMPORARY RESTRAINING ORDER

---

COMES NOW, Terri McGuire-Mollica, pro se Plaintiff, unskilled and unschooled in the law, seeking a Temporary Restraining Order ("TRO") and Preliminary Injunction pursuant to Fed R Civ P 65 against the above listed Defendants, where Plaintiff will establish that the threat of irreparable harm of infection and possible death should she remain in Bureau of Prisons custody as the nature of detention at the Aliceville, Alabama, facility makes exposure and spread of COVID-19 virus particularly harmful.

I. Summary

The Plaintiff is an inmate, housed at the Satellite Prison Camp in Aliceville, Alabama, who has hypertension, obesity (BMI > 30), a blood disorder, and cancer, which are four underlying issues that make her "particularly vulnerable to serious complications or death should she contract the COVID-19 virus" while in their confinement. (see.CDC.gov website) The Centers for Disease Control updated its warnings on 7/30/2020 to include the most current list of underlying medical conditions that "make persons of any age with underlying health conditions" such as cancer, hypertension, immunological disorders, and diabetes particularly vulnerable to serious complications or death should they contract the COVID-19 virus.

"Individuals in group living environment, especially incarcerated inmates, are at increase risk due to their close living quarters." (see Centers for Disease Control "Interim Guidance on Mange of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, www.CDC.gov updated 3/23/2020).

Attorney General William Barr, per his memorandum dated 4/22/2020, directed the Bureau of Prisons to immediately process "all camp and minimum custody inmates are to be considered for Home Confinement placed and moved expeditiously out of the BoP due to the COVID-19 pandemic" under the CARES Act 2020 (section 12003(b)(2)).

II. Standard

The standard for issued a TRO is identical to the standards to issue the preliminary injunction. (Windsor v. United States, 379 F. Appx 912, 916-7 (11th Circuit 2010)). To obtain injunctive relief, the moving party must demonstrate: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and, (4) if issued, the injunction will not be adverse to the public interest." (Four Seasons Hotels and Resorts BV v. Consorcio Barr SA, 320 F.3d 1205, 1210 (11th Circuit 2003)).

III. Argument - Conditions of Confinement in Violation of the Constitution or Laws of the United States (28 U.S.C. 2241(c)(3)

Plaintiff has four underlying illnesses (hypertension, obesity, blood disorder, and cancer), any one of which guarantees that she faces serious health risks, or possibly death, should she contract the COVID-19 virus in the camp whereconfined. In considering a motion for a TRO, the courts have also recognized that health risks to be particularly acute and of constitutional significance for inmates who are elderly or have underlying illnesses as listed in the CDC guidelines.

Under 18 U.S.C. section 4042(a)(2), the Bureau of Prisons is required to provide adequate and suitable living quarters for safekeeping, care, and subsistence of all person charged with or convicted of offenses against the United States. The Bureau of Prisons is also obligated to keep prisoners safe and free from harm while incarcerated under the Eighth Amendment. The Fourteenth Amendment for Federal detainees, may well be implicated if defendant can demonstrate that they are being subjected to conditions of confinement that would subject them to exposure to serious, potentially fatal, if the detainee is "of any age" with [certain] underlying

medical conditions" (see www.CDC.gov).

It is well-settled that an alleged constitutional violation constitutes irreparable harm. The alleged violation of a constitutional right trigger a finding of irreparable injury. Inmates can establish a due process violation for unconstitutional conditions of confinement by showing that a government official knew, or should have known, of a condition that posed an inmate excessive risk to health and failed to take appropriate action. Deliberate indifference can be established by either a subjective or objective standard.

In support of this motion, the Plaintiff asserts the following:

A. Plaintiff is "high-risk" per the CDC guidelines for serious complications from the COVID-19 virus:

Pursuant to the Center for Disease Control's directives, persons of any age with underlying health conditions of diabetes, cancer, immunological diseases, obesity, hypertension [and other diseases] are at increased risk for serious complications or death as a result of contracting the COVID-19 virus (see www.CDC.gov updated 7/30/2020).

Until 4/28/2020, Plaintiff was housed at the Satellite Prison Camp in an open warehouse dormitory-style housing unit. On 4/28/2020, the BoP and Warden at Aliceville moved Plaintiff to the Federal Correctional Institute to be placed on 23 hour/day lockdown in a 8 x 10 feet cell because she was "high risk" for contracting and possibly dying from the COVID-19 virus. "The BoP acknowledged as much by placing [Plaintiff] on the list of high risk inmates and moving [her] from a communal environment to a cell." (United States v. Resnick, 12-cr-192-cm (SD NY 2020)).

After 114 days, Plaintiff was returned to the SPC on 8/20/2020, due to inspectors from the Bureau of Prisons being scheduled for a sight visit on 8/25-26/2020. These camp-status inmates were being held illegally at the FCI, against BoP's own regulations and were returned to the Camp before the BoP inspectors arrived. This is particularly dangerous since on 6/30/2020, while being held at the FCI, a fire alarm was activated; all FCI inmates were evacuated but the Campers were locked in their cells.

B. The Defendant's have shown "deliberate indifference" (under the Eighth Amendment's prohibition of Cruel and Unusual Punishment) to her safety by not following the CDC guidelines.

Plaintiff can prove deliberate indifference by showing Aliceville's own staff and officers recklessly failed to act with reasonable care to mitigate the risk that the conditions posed to the inmates even though the defendants officially knew or should have known that the conditions posed an excessive risk to the plaintiffs

health or safety, as follows:

- During the period of 8/20 - 9/07/2020, on 26 separate occasions, Aliceville staff/officers, Duncan, Summerville, Wilder, Murphy, Daniels, and 4 unnamed officers entered Plaintiff's housing unit to conduct rounds and counts without wearing face masks, even though Alabama has a MANDATORY mask order;

- During the period 5/29/2020 - 8/26/2020, 10 different inmates were taken outside the prison on outside medical trips as follows:   5/29/2020 - Rodriguez &Thomas;  6/03/2020 - Hayes;  6/30/2020 - Woolridge; 7/09/2020 Mollica (Plaintiff), Calvin, Smith, and Robinson; 8/06/2020 Bailey; and 8/29/2020 Hepburn.  These inmates were not tested for COVID-19, had temperature checks, or quarantined even after going into a hospital setting.

- On 8/20/2020, the BoP and Warden at Aliceville relocated Plaintiff back to the Camp, which is a warehouse, dormitory style facility, with 65 bunk beds, shared restrooms, shared showers, etc. from the FCI (where Plaintiff was taken in April 2020 to "protect" her from the virus).  Social Distancing is impossible in this setting.

- On 8/25-26/2020, BoP officials came to SPC Aliceville for an inspection.  The staff/officers closed the computer room, moved exercise equipment to 6 feet apart, moved inmates from bunk-beds, insisted that inmates wear masks at all times, and made inmates stay 6 feet apart in lines, etc. for these 2 days only.  Everything went back to "Aliceville normal" after the inspectors left.

- On 9/01/2020, 2 transferred/self surrender inmates (Feazell and Macais) were placed in D-unit for the "high-risk" inmates; these inmates arrived at Aliceville on 8/22/2020 and both tested POSITIVE for the COVID-19 virus.  They were quarantined for 10 days and DID NOT receive another COVID-19 test before being released into general population.

- On both 9/02, 2 transferred inmates (Harris from Hazelton) and 9/03/2020 (Stonts from Tallahassee), arrived at Aliceville, were NOT tested for the virus, and released to general population in the "high-risk" D-unit.

- From 3/30/2020 - present, the cleaning supplies provided to orderlies and inmates do not contain bleach or alcohol, the only 2 agents known to kill the virus.

- From 3/30/2020 - present, inmates have only been provided 3 disposable face masks and 2 reusable ones, which do not meet the CDC guidelines to prevent the spread of the virus.

- From 3/30/2020 - present, inmates at the camp have only had their temperatures taken twice (4/21 and 4/24/2020).

The Supreme Court has recognized that the government's authorities may be deemed deliberately indifferent to inmates with current health problems where authorities ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year, including exposure of inmates to a serious, communicable disease, even when the complaining inmate shows no serious current symptoms. The Plaintiff need not demonstrate that they actually suffered from serious injuries to show a due process violation. Instead, showing that the conditions of confinement pose an unreasonable risk of serious damage to their health is sufficient.

In an application for temporary restraining order, the courts consider that other courts have recognized of the heightened risk to inmates in contracting the COVID-19. See CDC "Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities," updated 3/23/2020 (www.CDC.gov) stating "Individual in group living environments, especially incarcerated inmates are at increase risk due to their close living quarters."   Petitioner lives in a camp with dormitory-type quarters and no social distancing. Detaining vulnerable individuals without enforcement of appropriate social distancing and without specific measures to protect their delicate health poses an unreasonable risk of serious damage to their future health, and demonstrates deliberate indifference.

Absent this preliminary relief, Petitioner is likely to suffer irreparable harm from contracting the COVID-19 virus and not surviving.

IV.     Irreparable Harm - Risk of Death

An injury is "irreparable only if it cannot be undone through monetary remedies." Cunningham v. Adams, 808 F.2d 818, 821 (11th Circuit 1987).

On March 11, 2020, the World Health Organization declared COVID-19 a global pandemic. Petitioner is at a facility where there has already been more than 100 confirmed cases and another 80 inmates are awaiting test results (see www.BOP.gov). As of this date, there are more than 27 million persons worldwide that have contracted this virus, resulting in more than 900,000 deaths. In the United States, over 6.3 million persons have had the virus and over 190,000 have died.

The nature of detention centers and prison facilities makes exposure and spread of the virus particularly harmful. Dr. Jamie Meyer, an infectious disease specialist, who has worked extensively on the treatment and prevention of diseases in jails and prisons, recently submitted a declaring in the New York District Court, noting that "the risk of COVID-19 to people in prison and jail facilities is significantly higher than the community, both in terms or transmission, exposure, and harm to individual who become infected." See Meyer Declaration in Valesaca Wolf 20 Civ 1803 (SD NY 2/28/2020) DCF No. 42 "It will be impossible to prevent widespread infections inside a facility where the virus is now there because detainees live, sleep and use the bathroom in close proximity with others and because behind bars, some of the most basic disease prevention measure are against the rules or imply impossible."

The number of COVID-19 cases reported in the BoP continues to increases each week. There have been almost 10,000 inmates and more than 1000 BoP staff infected. More than 90% of BoP prisons are reporting cases. As of 9/07/2020, there are 1947 active inmate cases (an increase of 10% from 8/31/2020) and 661 staff cases (an increase of 500% from 6/26/2020). (see www.BoP.gov)

On 9/01/2020, the Council for Criminal Justice reported that the mortality rate in prisons, including the BoP, is 200% higher than the general population. The infections rate for prisons is nearly 7000 per 100,000 inmates, which is 400% higher than the general population. The prisons with the greatest number of COVID-19 cases are located in the Southern United States, with populations > 1000. Aliceville SPC/FCI prison fits all of those criteria. (see www.CCJ.org)

Petitioner argues that her continued confinement at SPC/FCI Aliceville where COVID-19 is present and

without adequate protection for her health violated her Due Process and protection Rights. The risks of contracting the COVID-19 in tightly confined spaces, especially prison is now exceedingly obvious. It can no longer be denied the Petitioner, who suffers from hypertension, cancer, a blood disorder, and obesity is caught in the mist of a rapidly-unfolding public health crisis. The Supreme Court has recognized that government authorities any be deemed "deliberately indifferent to an inmate's current' health problems" where authorities "ignore a condition of confinement that is sure or very likely to cause serous, communicable disease, even when the inmates show no serious current symptoms. Helling v. McKinney, 509 U.S. 25, 33, 113 S. Ct. 245, 125 L.Ed.2d 22 (1993).

Defendants have shown deliberate indifference to Petitioner's medical needs. The spread of COVID-19 is measured in single day totals, not weeks, months, or years. Defendants continue to ignore the conditions of confinement that will likely cause imminent, life threatening illness.

Defendants can argue that they are taking certain measures to prevent the spread of the virus; screening inmates; isolating any who report symptoms, conducting video court appearances; providing soap and hand sanitizer to inmates, and increasing the frequency and intensity of cleaning at the facility. However, based on Plaintiff's earlier assertions, these protocols are NOT being followed at Aliceville. Even if they were, these measure are patently insufficient to protect the Plaintiff. Defendant's cannot represent that the prison is able to follow CDC guidelines for social distancing. Confining vulnerable individuals, such as Plaintiff, without enforcement of appropriate social distancing and without specific measure to protect their delicate health "poses an unreasonable risk of serious damage to their future health." Phelps, 208 F.3d at 185)

V. Conclusion

Dr. Scott Harris, the Health Officer for the State of Alabama, was interviewed on the ABC National News (6/07/2020) and made the following comments regarding the COVID-19 pandemic in Alabama: (1) The worst was not over; (2) we are not through with the first wave; (3) reported cases in Alabama are not accurate due to computer issues and when corrected, the numbers will increase; and (4) there is still a second wave of the virus predicted in the Fall 2020.

(1) Based on the foregoing, Plaintiff is likely to succeed on the merits of her Temporary Restraining Order and Preliminary Injunction.

(2) The potential harm, i.e. death from the COVID-19 virus, is irreparable. The Plaintiff faces irreparable harm to both her Constitutional Rights and her Health.

(3) There is no threat of injury to the Defendant should the injunction be granted.

(4) The public interest favors Plaintiff's release. Petitioner's in the highly unusual circumstance posed by the COVID-19 crisis, continued detention of aging or vulnerable detainees does not serve the public's interest. See declaration of Dr. Homer Venters 5:19 Civ 1546 ECF No. 81-11 (CD Cal 3/20/2020). To the contrary, public health and safety are served bet by rapidly decreasing the number of individual detained in confined, unsafe conditions. See Gran Rivers Enterprises Six Nation Ltd v. Pryor, 425 F.2d 158, 169 (2nd Circuit 2005) referring to public health as a significant public interest.

VI. Relief

"When prisoners with underlying health conditional articulate a specific fear of the COVID-19 infection based on circumstances at the facility which they are housed, the persuasive precedent for [release] is overwhelming." Miller v. United States, Crim Case No. 16-20222-1 (ED Mich 4/9/2020).

"She is housed with many other in conditions that inevitable permit the virus to spread." United States v. Scpartz, 2020 WL 1910481 at *1(SD NY 4/20/2020).

There is a serious and urgent health crisis, especially for Plaintiff who has underlying health issues that have been left untreated by the BoP and Aliceville prison.

Petitioner seeks immediate release from the Federal Bureau of Prison and the Aliceville prison facility, subject to any conditions the court chooses to impose, due to the unsafe conditions during the global pandemic at the facility where she is confined.

Petitioner prays the Honorable Court grants her preliminary injunction and TRO and allows her immediate release from SPC Aliceville. Petitioner requests to quarantine for 14 days at her home.

Respectfully submitted, this the 7th day of September 2020.

*Terri McGuire-Mollica*
Terri McGuire-Mollica
Reg. No. 31860-001
c/o SPC Aliceville
P.O. Box 487
Aliceville, AL  35442

## Certificate of Service

I, Terri McGuire Mollica, certify under penalty of perjury, that a true and correct copy of this Writ of Habeas Corpus form 2241 and Request for Preliminary Injunction and Temporary Restraining Order was served on the U.S. District Court in Tuscaloosa, AL, via first-class prepaid mail, by placing it in the SFC Aliceville prison mailbox on this, the 7th day of September 2020.

Terri McGuire Mollica
Reg No. 31860-001

Witness: Myra Quarles 21100-035

⇔31860-001⇔
Terri Mollica
REG #31860001
Satellit Prison Cámp
P.O. Box 487
Aliceville, AL 35442
United States



⇔31860-001⇔
Tuscaloosa Federal Courthouse
2005 University BLVD
Tuscaloosa, AL 35401
United States